**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JTTONALI ONE EYE EL-BEY,
a/k/a Jtton Edward Watson

      Plaintiff,                             Case No. 1:21-cv-680

          v.                                 Barrett, J.
                                             Bowman, M.J.

ELLIOTT SYLVESTER, *et al.*,

      Defendants

### SUPPLEMENTAL REPORT AND RECOMMENDATION

This Report and Recommendation ("R&R") addresses a Supplemental Motion to Dismiss filed by Defendants regarding Plaintiff's remaining Fourth Amendment claims. For the reasons discussed below, Defendants' motion should be DENIED.

### I.    Procedural and Factual Background

The allegations in the above-captioned complaint are limited to the events surrounding Plaintiff's arrest on August 20, 2021.[1] For convenience, the undersigned draws from prior summaries of Plaintiff's complaint to set forth relevant allegations:

> Plaintiff alleges that on August 20, 2021, while he was driving in Wilmington, Ohio, he passed a police cruiser that was waiting at a stop sign. Plaintiff alleges that the police cruiser followed him until he reached his destination a short time later but then continued on its way. Plaintiff, who claims to be a "Moorish American National," alleges that he went to a tribal member's residence and knocked on the door. Plaintiff alleges that nobody answered

---

[1]Plaintiff has filed multiple civil cases in this Court, including a recent case filed in May regarding alleged interference with legal mail. *See El-Bey v. Butler County Jail*, No. 1:23-cv-285-MRB-SKB; *see also Watson v. Clinton County Sheriff's Office*, 1:07-cv-55-MRB-TSH (dismissed for failure to state a claim), *El-Bey v. FMC Lexington*, 1:22-cv-136-MWM-EPD (transferred to the Eastern District of Kentucky*); El-Bey v. United States*, Case No. 1:21- cv-574-MRB-SKB (stayed pending resolution of an ongoing criminal case); *El-Bey v. U.S. Postal Service*, 1:21-cv-590-MRB-SKB (dismissed without prejudice for lack of subject matter jurisdiction); *El-Bey v. Wisecup*, 1:21-cv-678-MRB-SKB (consolidated with Case No. 1:21-cv-574 and stayed); *El-Bey v. Walker*, 1:21-cv-679-MRB-SKB (dismissed with prejudice for failure to state a claim) The same individual is a Defendant in an ongoing criminal case arising out of a December 2020 arrest. *See U.S.A. v. Jtton Edward Watson, agent of JttonAli One Eye El-Bey*, Case No. 1:21-cr-110-JPH.

the door and that he had forgotten his spare key to the residence…. [A]s he started to call somebody to let him in, three police cruisers arrived, and defendant police officers Elliott Sylvester and Neil Rager approached him.

(Doc. 11, PageID 72-73).

In his complaint, Plaintiff further alleges that Defendant Sylvester stated "you have a warrant," and repeated "Jtton you have a warrant." Plaintiff disputed the name with which Defendant Sylvester had addressed him, identifying himself as "Jttonali One Eye El-Bey." (Doc. 10 at 4, PageID 62). Plaintiff then asked "what kind of a warrant," to which Defendant Sylvester responded "Bench Warrant for not going to court." (*Id.*) Plaintiff alleges that he told the officers that "all hearings were stayed following C.D.C. Declaration." (*Id.*) Nevertheless, the officers placed him into a police cruiser. After that, Plaintiff alleges that Officers Rager and Sylvester walked over to the motor vehicle that Plaintiff had parked, opened its doors and searched it. (Doc. 10 at 4-5, PageID 62-63). During the search, Plaintiff alleges that Defendant Sylvester seized a "small proofed bag which zipped double and locked and carried a leather wallet and chain in its side pocket," as well as (within the wallet) "receipts, and other Tribal Identification cards," and "privileged information." (*Id.* at 5). Plaintiff generally alleges that the bench warrant was not properly executed because "hearings were stayed following C.D.C. Declaration" regarding the Covid-19 pandemic. (Id.) While most allegations are against the two arresting officers, he identifies as an additional Defendant a third officer, Defendant Juillerat, who was allegedly present as "a ride along" in the police cruiser in which he was being transported to the Clinton County Jail. (*Id.* at PageID 9).

(Doc. 44, PageID 341-342).

The complaint alleges that Plaintiff was transported to the Clinton County Jail after his arrest, and was brought before Clinton County Municipal Judge Michael T. Daugherty three days later. (Doc. 10, PageID 65-66).[2]

Plaintiff alleges that he told Judge Daugherty: "Your officers seized me on a friv[o]lous bench warrant," but that Judge Daugherty replied that Defendant Sylvester was not serving a bench warrant but instead acted on "suspicious activity." (Doc. 10 at 8, PageID 66). Plaintiff alleges that he was "arrested under 2925.03 Trafficking [sic] in drugs, 05, 11, 12, 15 and 2923.13 Disability." (*Id.*) While not entirely clear, Plaintiff appears to allege that new drug charges were lodged against him based upon a separate "search and

---

[2]Defendants' motion cites to the tendered complaint (Doc. 1-1) submitted as an exhibit to Plaintiff's motion to proceed *in forma pauperis*. The Court cites to the complaint after it was filed of record. (*See* Doc. 10).

seizure warrant" (as opposed to the bench warrant for failure to appear) and that probable cause was lacking on the new charges. (*Id.*)

(Doc. 44, PageID 342).

Because of various delays, Defendants Elliott Sylvester, Neil Rager and Cody Juillerat did not respond to Plaintiff's complaint until a year after it was filed, when they filed a motion to dismiss in lieu of an answer on October 25, 2022. (Doc. 33). The undersigned filed a Report and Recommendation that concluded that Defendants were entitled to dismissal of Plaintiff's unlawful arrest and unlawful imprisonment claims based on the existence of a facially valid bench warrant. (Doc. 44, PageID 344-349). In contrast, the R&R concluded that Plaintiff had alleged "separate Fourth Amendment violations for the warrantless search of [Plaintiff's] vehicle and/or seizure of its contents." (Doc. 44, PageID 349, footnote omitted). The R&R rejected Defendants' motion to dismiss those separate Fourth Amendment claims. (Doc. 44, PageID 350).

Both parties objected to the R&R. (Doc. 45, 46). On May 3, 2023, the presiding district judge adopted the R&R in part, dismissing Plaintiff's unlawful arrest/unlawful imprisonment claims. But because the search and seizure claims relating to the vehicle had not been identified during the Court's initial screening of the complaint, those claims had not been fully addressed in the body of Defendants' original motion to dismiss, and were addressed only briefly in Defendants' reply memorandum. (*See* Doc. 54 at n.1, PageID 392). To allow for more complete briefing, the Court returned the newly identified Fourth Amendment claims to the undersigned. Consistent with the Court's order, the undersigned directed Defendants to file a Supplemental Motion to address the remaining Fourth Amendment claims. After Defendants filed their Supplemental Motion to Dismiss,

Plaintiff filed a response in opposition, to which Defendants filed a reply. (Docs. 56, 59, 60).

## II.     Standard of Review

As stated, Defendants' first motion to dismiss resulted in the dismissal of all of Plaintiff's claims but for the recently recognized Fourth Amendment claims. (Docs. 44, 54). Defendants have now filed a new Supplemental Motion to Dismiss to address those claims. The passage of time aside, this case remains in its infancy, at a stage in which this Court's review is limited to the pleadings.

A motion to dismiss generally will not be granted if it requires a court to look beyond the allegations of the complaint.[3] And in considering a Rule 12(b)(6) motion for failure to state a claim, the Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). Defendants' reliance on Rule 12(b)(1) and standing issues in their supplemental motion does not alter that standard of review. "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 95 S.Ct. 2197, 2206, 422 U.S. 490, 501 (1975);  *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015). Given screening standards under 28 U.S.C. § 1915(e) that result in the dismissal of most cases that fail to state any claim, liberal pleading standards under

---

[3]The Court can take judicial notice of other court proceedings. The Court granted Defendants' first motion to dismiss in part based on state court records that reflected that Plaintiff was arrested pursuant to a facially valid bench warrant for failure to appear in state court.

4

Rule 8, and the applicable standard of review, it is far more common for cases to be disposed of on motions for summary judgment, following discovery, than on motions to dismiss filed under Rule 12.

### III.    Analysis

### A.  Whether Plaintiff States a Claim Against Officer Juillerat

Plaintiff's claim arises under 42 U.S.C. § 1983. In order to state his claim, he must allege that Defendants, acting under the color of state law, violated his constitutional rights – here, the Fourth Amendment. In Defendants' supplemental motion, Defendant Juillerat first argues that any claims against him should be dismissed because the complaint "contains no factual allegation suggesting Officer Juillerat took part in any search or seizure." (Doc. 56, PageID 402).

To state a § 1983 claim against an individual officer, a plaintiff generally must allege that he or she was an active participant in the alleged constitutional violation. Here, Plaintiff alleges that Defendant Sylvester took the lead in the allegedly unconstitutional search when he walked over to Plaintiff's vehicle and opened multiple doors. (Doc. 10, PageID 62). However, reading the complaint as a whole, Plaintiff alleges that all three Defendants participated in the search in concert. For example, Plaintiff alleges that the other officers positioned themselves around the car, with Sylvester focusing on the passenger side of the vehicle, Rager moving the notice sign to read the VIN number, and Juillerat standing "at the rear where the hatchback was open, all doors were open." (*Id*.) After Plaintiff accused all three officers of an illegal search and seizure and asked for their names, Juillerat responded with his name but stated that he was "just a ride along." (*Id*.)

Defendants cite to *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) for the proposition that "[a]s a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability." *Id. at* 650 (quoting *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1983)).[4] But *Binay* was a case decided on summary judgment, after the record was fully developed. While Plaintiff's allegations about Defendant Juillerat's actions are limited,[5] a reasonable inference is that he actively participated in concert with the other two Defendants by positioning himself at the rear of the vehicle where the hatchback had been opened. The undersigned therefore concludes that the allegations are sufficient <u>at the pleading stage</u> to suggest Defendant Juillerat's active participation in the allegedly illegal search.[6]

### B.  Whether Plaintiff Pleads Plausible Fourth Amendment Claims

In Objections to the prior R&R, Defendants argued that the prior R&R "improperly created Fourth Amendment claims regarding the search of Plaintiff's vehicle and/or seizure of its contents that are not found in Plaintiff's Complaint." (Doc. 54, PageID 391). Overruling those objections, Judge Barrett agreed "that 'a closer review of the complaint leaves no doubt that Plaintiff has pleaded separate Fourth Amendment violations for the warrantless search of his vehicle and/or seizure of its contents.'" (*Id.*, citing Doc. 44, PageID 349 and Doc. 10, PageID 62-63 (complaint)). Defendants' supplemental motion

---

[4]A failure-to-intervene claim is an exception to the general rule, but does not appear to apply in the case presented. "Successful failure-to-intervene claims are rare and largely limited to one context - the use of excessive force." *White v. Goforth*, No. 22-5409, 2023 WL 3546527, at *3 (6th Cir. May 18, 2023).

[5]Additional allegations about Juillerat appear to focus on events after Plaintiff was transported to the jail for booking, beyond the scope of the Fourth Amendment violations that remain in this case. (*See id.*, PageID 64-65).

[6]Plaintiff's response in opposition to dismissal argues that video camera footage "can show direct participation" by Defendant Juillerat. (Doc. 59, PageID 423). What the evidentiary record may or may not show is not in issue at this stage of the proceedings.

argues that the Court's prior conclusion is in error, and that Plaintiff's allegations are not enough to state a plausible claim.

### 1. Plaintiff's Standing to Challenge the Search of the Vehicle

Defendants first argue that Plaintiff lacks standing to challenge any search of the vehicle because he does not sufficiently allege that he was an authorized owner or driver of the vehicle that was searched, and does not allege that he had a possessory or proprietary right in the vehicle. Defendants' focus on standing reflects a facial attack under Rule 12(b)(1), Fed. R. Civ. P. Thus, the Court accepts the allegations of the complaint as true and construes them in the light most favorable to Plaintiff. In order to establish standing a plaintiff must show: "(1) a concrete and particularized injury-in-fact which (2) is traceable to the defendant's conduct and (3) can be redressed by a favorable judicial decision." *Dickson v. Direct Energy, LP*, 69 F.4th 338 (6th Cir. 2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) and *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Under the narrow standard of review applicable to a facial challenge under Rule 12(b)(1), the undersigned concludes that the complaint is reasonably construed to include sufficient allegations to establish standing, as well as the requisite expectation of privacy under the Fourth Amendment.[7]

Plaintiff's complaint specifically alleges that on August 20, 2021, he was traveling "in a [non-commercial] conveyance registered to the Moorish American National;

---

[7]Technically, "in determining whether a defendant is able to show the violation of his ... Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469 (1998) (quoting *Rakas v. Illinois,* 439 U.S. 128, 140 (1978)). In *Rakas*, the Supreme Court was discussing a direct Fourth Amendment challenge in the context of a motion to suppress evidence. It is unclear whether the term "standing" might be more apt when a plaintiff seeks civil relief under 42 U.S.C. § 1983. In any event, the term "standing" is used in a loose sense "to refer to the threshold substantive determination of whether [an individual] has a reasonable expectation of privacy under the Fourth Amendment." *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001).

Indigenous Tribal Government authorized to Jttonali One Eye El-Bey; Chief Supreme Advisor Charter." (Doc. 10, PageID 61). From the context of the complaint, the Court reasonably infers that the phrase "[non-commercial] conveyance" refers to the vehicle that Plaintiff was driving at the time. (*See also id.*, "My destination was 50 yards away… as I approached I placed on the right blinker and pulled to a stop."). Plaintiff alleges that the same vehicle was "registered to the Moorish American National…Government" but "*authorized to* Jttonali One Eye El-Bey." (*Id.*, emphasis added). He describes himself as an official with the "Moorish American National; Indigenous Tribal Government." (*Id.*) Plaintiff's allegation that he was driving the vehicle implies a possessory interest, while his added allegation that he was "authorized" to drive the vehicle as an official with the entity to which the vehicle was registered is reasonably interpreted as alleging permissive use by the alleged owner.

Citing to the alleged registration of the vehicle to a "Tribal Government," Defendants argue that Plaintiff lacks standing to challenge the search of a vehicle that he does not own. (Doc. 56, PageID 404, citing *United States v. Taylor*, 496 F. Supp. 2d 852, 855 (S.D. Ohio 2006)). And Defendants further argue that Plaintiff has "failed to plead facts suggesting an expectation of privacy apart from ownership." (*Id.*, citing *United States v. Robinson*, No. 07-74-DLB-EBA, 2013 U.S. Dist. LEXIS 63563, at *63, 2013 WL 1878915 (E.D. Ky. May 3, 2013)).

A lack of ownership sometimes can defeat standing,[8] but does not support dismissal here. Defendants cannot rely on *Taylor* because that case involved a motion to

---

[8]In one case cited by Defendants, the court begins its analysis with a string citation in support of the following general principle: "It is well-established that a driver of a borrowed vehicle may establish a reasonable expectation of privacy in a vehicle even though that driver is not the owner of the vehicle." *United States v. Robinson*, 2013 WL 1878915, at *8 (internal quotation marks and citations omitted).

suppress filed by a non-owner driver of a vehicle that was searched following a traffic stop. The *Taylor* court conducted a six-day evidentiary hearing before denying the motion to suppress. Based on the fully developed record, the court concluded that the defendant had failed to prove he had permission from the owner to drive the car to show a possessory interest under the Fourth Amendment. In contrast, this Court's task is limited to a review of whether Plaintiff has adequately pleaded a possessory interest, not whether he can prove it.

*Robinson* is similarly distinguishable. There, a bank robber moved to vacate his conviction, alleging ineffective assistance of counsel based on counsel's failure to challenge a warrant for the search of a vehicle found close to where the defendant was hiding at the time of his arrest. The court agreed that counsel had erred in failing to challenge the facially defective warrant, even though the defendant did not own the vehicle, because the record suggested that he had the permission of the owner (his brother) to drive the vehicle and that he had control of the vehicle because the keys were in his possession. *United States v. Robinson*, 2013 WL 1878915, at *8. Although *Robinson* is procedurally inapposite, it arguably supports Plaintiff's Fourth Amendment claim here. As in *Robinson*, Plaintiff alleges that he was "authorized" to operate the vehicle by the "Tribal Government" to which the vehicle was registered, and that he held the keys to the vehicle at the time of his arrest.

Defendants protest that the complaint contains "no facts explaining how [Plaintiff] came to possess the vehicle or whether restrictions were placed on its usage." (Doc. 56, PageID 405). But notice pleading does not require that level of detail. Plaintiff alleges that he was the "authorized" driver. The most reasonable construction of the complaint

suggests that he was in fact the sole driver and occupant, with the keys remaining in his possession at the time of his arrest. He alleges that after he parked the "subject vehicle," he went to the front door and knocked because he had forgotten his spare key "which was not on the …key chain" of the same vehicle. (Doc. 10, PageID 61). He then observed three police cars approach, and alleges that the three police vehicles surrounded the car he had driven, with one unit "immediately parked behind mine conveyance." (*Id.*)

Plaintiff alleges that Defendants told him they had a warrant for his arrest, handcuffed him, and placed him in a police cruiser. (*Id.*, PageID 62). He also alleges that Defendant Sylvester "then went to the Tribal Government [Non Commercial] motor vehicle and begun to open the door," that Officer Rager "moved the notice sign to read the VIN number," and that Officer Juillerat "stood at the rear…." (*Id.*) Defendant Sylvester appeared to search papers on a passenger seat including a piece of mail before moving on to a "glove box [that] contained Title, Registration [non-commercial form] with a ¢2 Navajo stamped -cancelled by the USPS. The Authorized Personnel I Titled Jtton One Eye El-Bey." (*Id.*)

Focusing on a single reference to a "Tribal Government PT Cruiser," Defendants argue that the complaint "suggests" that more than one vehicle was involved and that – given the lack of a consistent description of car make and model - Plaintiff "challenges the search of an unspecified vehicle." (Doc. 56, PageID 403; *id.* at n.4, PageID 405). But in context, the most reasonable interpretation is that Plaintiff's varied descriptions describe a single vehicle that he drove and parked at a residence, that Defendants drove up and surrounded that vehicle with their police cruisers, and then searched the same vehicle after his arrest. For example, Plaintiff describes driving his "[Non-Commercial]

conveyance" and parking that vehicle before walking to the front door of a residence. (Doc. 10, PageID 61). While standing at the door, he witnessed three police cars arriving, with one[9] of the cruisers "parked directly behind the Tribal Government PT Cruiser," the "other stopped in the middle of the street," and a third "unit pulled behind the stopped unit in the street." (*Id*.) The complaint alleges that Defendants began to approach him with Defendant Rager approaching "from the rear left which [police] unit was immediately parked behind mine conveyance." (*Id*., PageID 61). Plaintiff's allegations are entirely consistent with this Court's prior conclusion – leaving "no doubt that Plaintiff has pleaded separate Fourth Amendment violations for the warrantless search of his vehicle and/or seizure of its contents." (Doc. 54, PageID 391 (internal quotation marks and additional citations omitted)).

### 2. Plaintiff's Standing to Challenge the Seizure of Property

During the search of the vehicle after Plaintiff's arrest, the complaint alleges Defendant Sylvester searched through papers on a passenger seat of the subject vehicle and that Defendant Rager radioed: "He has a Moorish American Travel Document in here," presumably related to documents found inside the vehicle. (Doc, 10, PageID 63). The complaint next alleges that Defendant Sylvester "seized a small proofed bag which zipped-double and locked and carried a leather wallet and chain in its side pocket, inside

---

[9]Defendants [mis]interpret a numeric symbol "one" as the pronoun "I," leading them to misread the complaint and suggest an ambiguity that does not exist. The hand-written sentence states: "City Police Units came from the North and South, 1 parked directly behind the Tribal Government PT Cruiser[,] the other stopped in the middle of the street, neither had initiated their emergency lights, another unit pulled behind the stopped unit in the street, then an ambulance rode past." (Doc. 10, PageID 61). In context, the undersigned reasonably construes the complaint to allege that "one" of the police cruisers parked behind Plaintiff's vehicle, with the latter vehicle variously identified as the "[Non Commercial] conveyance," "mine conveyance, " the "Tribal Government [Non Commercial] motor vehicle" and the "Tribal Government PT Cruiser." Apart from context, the handwritten pronoun "I" in Plaintiff's complaint has horizontal lines on the top and bottom, while the numeric symbol does not.

said wallet were receipts, and other Tribal Identification cards. Privileged information was in proper transport inside said double zipped-locked case." (*Id.*)

Defendants argue that "[I]t is unclear whether Plaintiff allege[s] a seizure of property claim in the alternative to a search claim or [whether] he alleges a separate, standalone search claim in addition to a search claim." (Doc. 56, PageID 405). But this Court previously identified "**separate** Fourth Amendment **violations** [plural] for the warrantless search of his vehicle and/or seizure of its contents." To the extent that the Court's use of "and/or" was ambiguous, the Court understands Defendants' supplemental motion to challenge the sufficiency of Plaintiff's allegations about the extra search and seizure of the bag and wallet found in the vehicle, as well as the search or seizure of any other items located inside the vehicle.

Building on the premise that Plaintiff has insufficiently pleaded a possessory interest in the vehicle itself (a premise the undersigned rejects), Defendants further argue that Plaintiff has failed to sufficiently allege either that he owned the bag or other items searched and seized from within the vehicle, or held any possessory interest in those items.[10] Again, the undersigned disagrees. The Court previously drew the reasonable inference that Plaintiff had standing to challenge the search and seizure of items recovered from the car based on the allegations that Plaintiff was authorized to have possession and control of the car (and implicitly any contents contained within it) when he drove and parked it on the street before the search. In the limited review under Rule 12(b)(1) and (b)(6), the undersigned stands by that interpretation. Should discovery prove

---

[10]In his response in opposition to Defendants' motion to dismiss, Plaintiff suggests that Defendants improperly obtained a warrant to search the bag and wallet *after* they had had seized the items from the vehicle. (*See*, *e.g.*, Doc. 59, PageID 421). Defendants' motion to dismiss does not refer to a search warrant for the bag or wallet, nor would any such arguments be cognizable in the context of the pending motion to dismiss.

that Plaintiff lacks a possessory or ownership interest in the items, Defendants remain free to renew their arguments on summary judgment.

### 3.  The Limited Exception Provided for a Search Incident to Arrest

In a reply memorandum in support of their first motion to dismiss, Defendants argued that the vehicle search was constitutionally valid as a "warrantless search[] incident to an arrest." (Doc. 38, PageID 304-305). Defendants' supplemental motion repeats and expands upon that argument. Therefore, the undersigned begins by reiterating the analysis contained in the prior R&R:

> Under the limited scope of review afforded by Rule 12(b)(6), the undersigned is not persuaded. A search conducted incident to an arrest is a narrowly tailored exception to the rule that a warrant is required. Not every search of every vehicle is authorized as "incident to an arrest." In *Arizona v. Gant*, 129 S.Ct. 1710, 1719, 556 U.S. 332, 344 (2009), the Supreme Court held that a search of a vehicle violated the Fourth Amendment where "police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein." *See also U.S. v. Pippins*, 2022 WL 17687793 (S.D. Ohio Dec. 15, 2022) (granting motion to suppress, discussing scope of warrantless searches). Here, Plaintiff alleges that he had parked and exited the vehicle and was standing at the doorstep of the residence in question when police informed him he had an outstanding bench warrant. He further alleges that only after he was secured in a police cruiser did Defendants search the parked vehicle in which he had arrived. Under the facts as alleged, Plaintiff appears to have stated a Fourth Amendment claim that is not subject to dismissal under Rule 12(b)(6).

(Doc. 44, PageID 350).

Defendants' new motion maintains that the "unique circumstances" alleged in Plaintiff's complaint prove that *this* search falls within the limited exception for a warrantless search and is consistent with Fourth Amendment. (Doc. 56, PageID 408). Defendants remind the Court that the "touchstone of the Fourth Amendment is reasonableness, not bright-line rules." *United States v. Jones*, 953 F.3d 433, 436 (6th Cir.

2020) (internal quotation marks and citation omitted). Defendants assert that Plaintiff "denied his own name" during the arrest. (Doc. 56, PageID 409). They ask this Court to find that "the [warrantless] search of the vehicle incident to arrest naturally flowed from a valid arrest, as it is reasonable to search for documents and other items that could confirm or deny Plaintiff's true identity." (Doc. 56, PageID 408-409).

But Defendants' argument suggests a motivation for the search not alleged in the complaint itself.[11] And the undersigned finds no controlling or persuasive authority that supports such an expansive view of Fourth Amendment jurisprudence. Notably, Defendants' primary case support is an unpublished California case in which, on initial screening, a district court granted leave to amend to a pro se plaintiff arrested during a traffic stop. After granting leave to amend to re-assert a civil rights claim under the Fourth Amendment, the court set out the Ninth Circuit's "legal standard for Fourth Amendment searches and seizures" in dictum. *See Grissom v. Modesto Police Dep't*, No. 1:21-cv-01273-JLT-SAB, 2022 WL 432861, at *12-13 (E.D. Cal. Feb. 11, 2022). Defendants cite to a brief reference within that dictum that discusses law enforcement's right to conduct a limited search when a suspect refuses to produce identification during a traffic stop.

*Grissom* is not persuasive. This case does not involve a search of a vehicle or of property within the reach of an individual incident to a traffic stop. Accepting Plaintiff's allegations as true for purposes of the pending motion, Defendants arrested Plaintiff while

---

[11]For example, the complaint does not allege that Plaintiff "denied his own name," but appears to refer to a disputed name change. Plaintiff alleges that Defendant Sylvester stated: "Jtton you have a warrant," and in response, Plaintiff asked "Jtton who?" Plaintiff stated, "my name is Jttonali One Eye El-Bey. I will go to see the courts to clear this up." (Doc. 10, PageID 62). Plaintiff further alleges that "clipped on my shirt collar was mine MOORISH AMERICAN NATIONAL: Tribal Officer Identification card with proper Identification…." (*Id.*, PageID 63). The complaint relates another dispute that ensued during the booking process at the Clinton County Jail, including an allegation that the booking officer "attempted to address me by the former name." (*Id.*, PageID 64). Plaintiff protests that the judge before whom he was arraigned also "attempted to address me as fictitious Name" despite knowledge of a name change. (*Id.*, PageID 66).

he was standing at the front door of a private residence based on a bench warrant previously issued by a state court judge for failure to appear. Defendants were confident enough of Plaintiff's identity to make that custodial arrest. Only after he was secured did the officers search the vehicle that Plaintiff had parked on the street some unspecified distance away from the front step where he was arrested. In *Arizona v. Gant*, the Supreme Court confirmed that the Fourth Amendment "does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle" unless police reasonably believed "that evidence of the offense of the arrest might be found in the vehicle." *Id.*, 129 S.Ct. at 1714, 556 U.S. at 335. Plaintiff's arrest on the bench warrant suggests no conceivable basis for believing that "evidence of the offense" might be in his vehicle. Thus, Plaintiff's allegations are sufficiently pleaded to state a Fourth Amendment claim under *Arizona v. Gant*.

### 4. The Allegations Support a Reasonable Expectation of Privacy

Reiterating their Rule 12(b)(1) arguments, Defendants also assert that Plaintiff has stated no cognizable constitutional claim under Rule 12(b)(6) because he has "failed to plausibly plead that he had a reasonable, legitimate expectation of privacy in the area searched," because he drove "someone else's vehicle." (Doc. 56, PageID 407-408). The undersigned rejects this argument for the reasons previously stated. At the pleading stage, it is enough that the complaint alleges that Plaintiff was "authorized" to drive the vehicle by the entity to which the vehicle was "registered," that he alone drove the vehicle to the scene and parked it, that he had the keys in his possession, and that he did not consent to its search or to a search of any containers contained within it.

### 5. The Allegations do not Support Inevitable Discovery

Defendants alternatively argue that even if Plaintiff has (or can in the future) plead a possessory or ownership capacity in the property located *in* the vehicle, the complaint still fails to state a plausible claim. Defendants reason that Plaintiff has failed to allege "how, while incarcerated, he would have retained a possessory interest in the allegedly-seized property such that the Officers' actions interfered with his possessory interests." (Doc. 56, PageID 411). But Defendants' argument assumes that they had the right to seize the vehicle and search both it and any property (including containers) within it. Plaintiff plausibly alleges that Defendants had no such right, and that they conducted an illegal warrantless search of the vehicle and its contents.[12] Because it is unclear at this stage that the searches and seizures were lawful, Defendants are not entitled to dismissal based on a theory that any possessory interest would have been subject to forfeit upon Plaintiff's arrest. While an arrestee's possessory interests to property on his person may be curtailed, a custodial arrest does not result in immediate and automatic forfeiture of possessory rights to property that is neither on the arrestee's person nor within his reach.

### C. Defendants are not Entitled to Qualified Immunity

Defendants argue that they are entitled to qualified immunity for any claims of monetary damages against them in their individual capacities. To overcome a motion to dismiss based on qualified immunity, Plaintiff must "plausibly allege facts showing (1) that [the Officers] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Marvaso v. Sanchez*, 971 F.3d 599,

---

[12]There are no allegations in the complaint to suggest that the vehicle was parked in a way that obstructed traffic or that Defendants had any independent authority to impound it. To the contrary, the complaint implies that after searching the vehicle and seizing items contained within it, Defendants closed the doors and left the vehicle in place.

605 (6th Cir. 2020) (quotation omitted). Defendants argue first that Plaintiff has failed to allege that any constitutional violation occurred. For the reasons stated, the undersigned disagrees. The complaint plausibly alleges that Defendants violated Plaintiff's Fourth Amendment rights when they conducted a warrantless search of the parked vehicle he had been driving, including a search and seizure of items inside that vehicle.

Defendants next argue that even if a violation of the Fourth Amendment occurred, Plaintiff cannot point to controlling case authority in either the Supreme Court or the Sixth Circuit that demonstrates that his Fourth Amendment rights were "clearly established" at the time of his arrest. As Defendants phrase it: "[Plaintiff] cannot point to a case involving a person arrested on a bench warrant who denied his own identity and claimed association with a sovereign entity, after which the court found an officer was prohibited from conducting a search of a vehicle incident to arrest." (Doc. 56, PageID 413). Defendants again cite to the unpublished *Grissom* as an example of "one court [that] observed that police officers could perform such searches." (*Id*.)

The undersigned has already distinguished the fact pattern here from the traffic stop at issue at *Grissom*, and explained why the California case is not persuasive. The undersigned also finds Defendants' definition of Plaintiff's protected constitutional right to be unreasonably narrow. Plaintiff's Fourth Amendment rights were clearly established by *Arizona v. Gant*, if not earlier. *Accord*, *Van Heck v. Cnty. of Macomb*, No. 08–cv–13886, 2011 WL 39133, at *7 (E.D. Mich. Jan 6, 2011) ("The state of the law in 2007, as well as the clearly-articulated policies justifying the state of the law, were such that a reasonable person would have known that the search of a vehicle after the suspect had been arrested, and when the arrest occurred away from the vehicle with no possibility of the

17

arrestee accessing the vehicle, was in violation of the law."). Plaintiff's allegations that he disputed the name by which the officers were addressing him as a "former name" no more gave the officers cause to conduct a warrantless search of the parked vehicle than it would have authorized a warrantless search of Plaintiff's residence. Nor are Plaintiff's unique political beliefs or "association with a sovereign entity" relevant. Plaintiff's Fourth Amendment rights exist independent of whether Plaintiff believes in the U.S. Constitution or the sovereignty of the U.S. government.

### D. Plaintiff's Claim for Monetary Damages and Injunctive Relief

The last argument Defendants present in their supplemental motion[13] is that dismissal is required because Plaintiff has not alleged any "actual injury" that would provide him with compensable relief. The undersigned recommends against dismissal on this basis.

In the "Relief" section of the complaint form, Plaintiff seeks both monetary damages and injunctive relief. But despite a numbered list of ten items, the precise contours of the monetary and injunctive relief that Plaintiff seeks remain unclear. In terms of injunctive relief, Plaintiff seeks: (1) "immediate release"; (2) "warrant and arrest [of] all wrongdoers"; and (3) "Return [of] CV-0016-420 to JW El-Bey [religious land use Act]." (Doc. 10, PageID 68). The use of "return" in the third item suggests that Plaintiff may be seeking the return of papers that he alleges were improperly seized. Plaintiff also

---

[13]Plaintiff uses the phrase "official capacities" once in his eighteen-page memorandum in opposition to the supplemental motion to dismiss. (Doc. 59, PageID 427). Seizing on that cursory reference, Defendants argue for the first time in their reply memorandum that "any official capacity claims should be dismissed" based on Plaintiff's failure to include sufficient factual allegations to establish a *Monell* claim. (Doc. 60, PageID 439). But Defendants made no arguments relating to capacity in either their original motion or in the body of the pending supplemental motion to dismiss. The undersigned declines to address this newly presented argument in a reply memorandum. This case is rapidly approaching the two-year mark. Absent some reason for a stay, Defendants will be directed to file an answer so that the case may proceed on the remaining Fourth Amendment claims.

requests: (4) "admissions" concerning his date of birth, ethnicity and race; (5) to "cease all properties owned by" Defendants; and (6) to "cease all bank accounts owned by" Defendants. (*Id.*) He also requests: (7) a monetary judgment in an unspecified amount; and (8) an injunction regarding government use of a "[fictitious] name." Last, he seeks: (9) "manual ER3720: Forensic Audit Trail by Army Corp."; and (10) "$500,000 per occurrence [Fictitious] name: Doe, John [Defendant]." Construing Plaintiff's complaint liberally, his requests for relief include requests for the return of personal property or papers and some form of monetary judgment.

In his response in opposition to dismissal, Plaintiff primarily argues that he is entitled to damages for his "loss of liberty" that he alleges flowed from the unreasonable search and seizure. That argument is unpersuasive, in part because this Court previously concluded that he was arrested pursuant to a lawful bench warrant.

Still, the undersigned also finds unpersuasive and rejects Defendants' argument that dismissal is required base on a failure to plead an adequate injury to support an award of compensatory damages. The undersigned finds persuasive *Slough v. Telb*, 644 F. Supp. 2d 978, 993 (N.D. Ohio 2009), in which the court rejected a similar argument to that made by Defendants here:

> Defendants['] assertions are only applicable to the question of special compensatory damages. Defendants fail to take into consideration the myriad options for relief available to plaintiffs in § 1983 suits.
>
> Relief may take many forms. Compensatory damages may be awarded for specific monetary losses such as lost wages, lost earning capacity, medical expenses, as well as for injuries not quantifiable such as pain and suffering, emotional distress, and so on. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) ("Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation, personal

humiliation, and mental anguish and suffering.'"). Nominal damages may be awarded even in the absence of proven actual injury. *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) ("[N]ominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury."); *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Sutton v. Board of Education,* 958 F.2d 1339, 1352 (6th Cir.1992).

*Id.*, 644 F. Supp. 2d at 993. The *Slough* court denied the defendants' motion to dismiss for lack of "actual injury," explaining that, among other things, the plaintiff "may seek compensatory damages for the actual injuries of seizure of his property." *Id*. at 994. In other words, being deprived of one's property alone is sufficient to suggest "actual injury" at the pleading stage.

## IV. Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendants' Supplemental Motion to Dismiss (Doc. 56) be **DENIED**.

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JTTONALI ONE EYE EL-BEY,
a/k/a Jtton Edward Watson

       Plaintiff,                              Case No. 1:21-cv-680

          v.                                Barrett, J.
                                                 Bowman, M.J.

ELLIOTT SYLVESTER, *et al.*,

       Defendants

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).